The next case on the calendar is United States v. Perez. Good morning, your honors. John Wallenstein on behalf of Eugenio Perez. I think hard cases make bad law, they say. And this is a very difficult case for me because Mr. Perez has been convicted of some heinous crimes that really implicate the public trust. And so I realize that I'm climbing uphill here. But I think that there are a couple of things that are important. Number one, to get this out of the way, I think the imposition of a fine by Judge Matsumoto was incorrect. The probation department said we don't believe he has the ability to pay a fine. Somewhere buried in the PSR. On your upward climb, would you – because I'm very confused about the status of his pension. Okay. And I don't – I'm frankly not sure what the reality is. And I'd like to just know. Well, what I understand is – and the record is unclear because at the time of sentencing, when they spoke about – when they began to speak about his pension, when Judge Matsumoto talked about that, Mr. Perez attempted to interject. He said no. That's on the record. He didn't get to finish that sentence. And unfortunately, Mr. Montgomery didn't elaborate on that. My understanding – and it's based on my conversations with my client, frankly – is that he is not entitled to collect his pension because he left federal service prior to the 15-year vesting point. I don't think it really matters whether he left voluntarily or whether he was fired. Apparently, he resigned so that he would not be fired. But I'm told that he will not be able to collect his pension. Presumably, this is objectively verifiable. I suppose it is. I have not made that attempt. But isn't that problematic for your position? I don't want to spend all of your time talking about something that may be the best argument of error but is probably the least significant in a way to him. That's why I said I want to get it out of the way. But it's just – since it was not raised – this is not just a question of is it – not raised by his lawyer. It's not just a question of is it forfeited or waived. It's a question of the result of that is that we have no evidence either way as to whether this was inaccurate. Am I right that the PSR referenced the pension? The PSR referenced the pension in one sentence that said he can collect his pension. But they also said we don't believe he has the ability to pay a fine. Those sentences seem to be – I understand that. I understand that. But he certainly has no ability to pay a fine now. And the question is what is the impact of the pension? I'm not saying, oh, it's in the PSR. It must be true. But in terms of the record that was there before the judge, there was that statement. And then he says no, without elaboration. I don't know whether this could be – would be worth or could be the subject of a 2255 or something. But we just have no record whatsoever to suggest what – that what you're saying is actually correct. I agree with you, Judge Lynch. I understand that. And perhaps it is the subject of a 2255. But I still think there's insufficient evidence to establish that he should have been fined. There was an indigency finding by virtue of the fact that Mr. Montgomery was appointed under the Criminal Justice Act, as am I. Yeah, but that's now. Right. That's now. No one says you can't get an appointed lawyer because 20 years from now you'll get a pension. That's right. So what the judge apparently thought was probation department, you kind of got this wrong in a sense to say he can't pay a fine because in the future he could be, as evidenced by the fact that you tell me, he's going to get a pension. That's what the judge was saying. It may be inaccurate, but I don't think we have a record that says on something that – I guess you'd be going outside the record if you came in and said, here's the collective bargaining agreement, or here's what the administrative office of the U.S. Courts Personnel Department says are the rules, but we don't even have something outside the record. That's precisely why I didn't think it was appropriate to delve into it. Okay. Now that I've used five of my eight minutes on that. I think the vulnerable victim enhancement that Judge Matsumoto applied here is an issue because I think the comparison that she should have made is between these victims, and I'm not by any means diminishing that they were, in fact, victims, but that these victims were not any more vulnerable in this situation than any other prisoner, and I think that's the universe. They were, and she said specifically why she thinks they were, so I'd like you to address that. She says the one person had just come out of the shoe. He claimed, according to her testimony, that he's the one who got her out, which seems to me to be rather implicitly, strongly an indication that he could get her back in. So that's one of them, and there were two others, I believe, who were subject to deportation, and we've got case law saying that that's different. So as, granted, the principal thing here is they're inmates. That's one reason why this is a serious crime, and that's already there, but she didn't say, yes, and the fact that they're inmates gives a vulnerable victim enhancement. The judge went on to say there are reasons to say these people are doubly vulnerable, as it were. Well, I think the universe of people to whom they should be compared are the universe of female prisoners at the MDC, and I don't think it's unusual that an individual is removable for lack of status in the United States, nor do I think that that makes them especially vulnerable because Lieutenant Perez or any other MDC officer had absolutely no power to do anything about that. They could not have them stay in the United States. They could not have them deported strictly up to ICE. Objectively speaking, that's true, but I think the case law recognizes people with no legal immigration status as vulnerable is not about who is exploiting them at any particular moment. It's that these are people who would be fearful of authority figures, and that may be empirically correct or not, but isn't that what the judge was really saying? Well, I think that is what she was saying, but I don't think it's correct for another reason, and that is that he did not, I don't think, single them out for that reason. The record is replete with expression by him that you have nice legs, complimented their figures, talked about how sexy they were, whatever he did. I think that he picked them, and I think the record supports this, that he picked them because of what they looked like, because of what he thought they might do for him, rather than because they were removable and therefore I'm going to pick on you, or I'm going to get you out of the shoe. I'm going to get you out of the shoe because I like the way you look. I don't think that's exploiting a vulnerability, which is what the enhancement is designed to protect against, or to punish, if you will. Am I correct in stating that you would have to prevail on both your challenge to the use of force enhancement and the vulnerable victims to have an effect on the guidelines range? I think that's right, Judge. And I think the use of force enhancement gets into the argument of whether or not under 412, Mr. Montgomery should have been permitted to conduct that cross-examination, and obviously I think it's error for Judge Matsumoto to have prevented that cross-examination. And I think that's so because we routinely state in every jury charge I've ever heard, or every jury charge I've ever read, and I think the same goes for your honors, the jury has to find that the government has proven beyond a reasonable doubt each and every element. So if there's something that can negate an element of the crime, the defense is entitled to attempt to exploit that. I hear that, but it has to be relevant. Suppose you had an inmate who comes to the FBI or somehow comes to the attention of the authorities and says, the guards here are terribly brutal. Officer A beat me with a baton. I hear that every day. And Officer B hit me with his fist on a prior occasion before Officer A. Would you be able to impeach an aggravated assault-type charge against Officer A by asking the witness, well, isn't it a fact that you only got beaten with fists? You say you only got beaten with fists by Officer B. And that makes your enhanced allegation against Officer A less credible. I think with all due respect, Judge Lynch, that's a different question than what we have here. I don't think it is. The first officer is guilty of rape, and the second officer is also guilty of rape, only the argument is in an aggravated form because he used force as well as the force of his authority. So why does the fact that some other officer relied on one thing mean that the second officer wouldn't commit an aggravated version of the same offense? Because the cross-examination that was intended, that Judge Matsumoto precluded, was with respect to the inmates' admitted consensual sex with other officers. Well, it's not consensual. That's the whole point. Well, it isn't consensual because they're prisoners. Right. By virtue of that fact. But the force that's used here, I don't think, as I read the testimony,  it says, you know, he pulled my head. Well, right. So that's something that he may have done in the course of this. It counts as use of force, it seems to me. But it's hardly incompatible with the idea that the principal reason why this victim is being victimized and is put in this sexual position is because she has to submit to his authority. Well, but submission to authority is different than submission to physical force. Well, there's no argument about submission to physical force. The question is whether he used physical force. Well, that's right. And that's why the question of whether or not they consented to have sex with other officers. So if you had sex with Officer 1 because he says, look, I'm in charge in this place and you've got to do what I say, and then she goes along with Officer B, and Officer B is a sadist. So he likes to have sex by whacking people with a stick while he does it. He would be using force. But there's no claim that I see here that she would not have had sex with him if he hadn't used force. And I think that's an element of the offense. But what if Officer A had sex with the inmate because the inmate came on to him and said, listen, I can do this for you. You help me and I'll help you. And she was the one who initiated it. And we don't know that because the cross-examination with respect to that was precluded. And I don't suggest that any sex with a prisoner by an officer is consensual. It isn't by law. But if we were permitted to cross-examine that. But why is this any different than any other instance of the rape shield law? There may be, you know, it's the core basis for that rule is a finding by the rule makers endorsed by Congress that ordinarily this is not relevant. And it's not relevant because the fact that you willingly have sex with Joe doesn't mean that it's less credible that you didn't want to have sex with Fred and he forced you. I understand that. But I think it comes out of 412 because of the constitutional issue. But you're saying that the rule is basically unconstitutional because in virtually every case you could make that argument that there is some relevance, contrary to the rule, to prior sexual behavior, and therefore it's unconstitutional to preclude it. I'm not suggesting that the rule itself is unconstitutional. I'm suggesting that under certain circumstances, as here, where there was a possibility of cross-examining with respect to an element of the crime, and in this case the use of force. Yeah, but there's always an element. See, in any rape case there is an element of consent, right, or something like consent. True. And the point of the rule is a determination that ordinarily it is not relevant that someone had sex with person A, that that person claims to have been non-consensually forced to have sex with person B. Now, what is there in this instance that distinguishes that basic proposition, which you say is not unconstitutional on its face? What distinguishes it here is that it's specific. It's not, we're not saying that. Why is it, what is specific about it? Well, we're not saying that you get to cross-examine a victim on all of her prior sexual activity. That's the purpose of 412, to keep that out because the jury is supposed to decide based on what happened in this case, and she's not supposed to be dragged through the mud because she can be telling the truth here. But I think the point is that with respect to the element of force, to say that she had consensual sex under similar circumstances, that is, with a BOP officer on a prior occasion that she may have initiated, that's important to negate the issue of force with respect to Perez because that eliminates the aggravated sexual abuse because that's where the force element is different than in the sexual abuse with a ward and so forth. So I think that that's the distinction that I'm making. I understand your point, Judge Lynch, but I think I'm right. Basically, the only reason we know that she had sex with either of these people is that she told us about it, right? I mean, there's no evidence other than the victim's testimony, really, right? Neither of these things took place on camera or anything like that. Pretty much. That's correct. But since she admitted to the government, and obviously we learned about it through discovery, that she had had consensual sex with other officers in the past, I think that that was relevant and that we should have been permitted to cross-examine her with respect to that issue. I think I've covered it. Unless any of you have any other questions, I did reserve some time. I think I've used a lot of it. Thank you. Chief Judge Livingston, and may it please the Court. My name is Victor Zapana. I'm an assistant U.S. attorney in the Eastern District of New York, and I represent the United States in this appeal. I want to start with, first, the cross-examination point and the vulnerable victim point. I think these are simple points for exactly the line of questioning you gave, Your Honor, Judge Lynch. First, my friend's theory on how the Constitution should serve an exception to Rule 412 would basically render Rule 412 totally nugatory. Essentially, there's always that argument, as you said, Judge Lynch, that we could always use prior sexual acts of a victim to shed light to one of the elements of force. That argument is basically no different in any run-of-the-mill criminal case involving sexual misconduct. So I don't see my friend's argument really holding water. Otherwise, the exception really swallows up the rule. My second point on vulnerable victim. Chief Judge Livingston, you make the point spot on. I like charts. I have charts here. I have a chart in the brief. If we go through all of the procedural analysis about the counting of the various sort of permutations available, and you have to find, Your Honors, that one, use of force was wrong. Two, vulnerable victim on Jane Doe 1 was plainly wrong. Three, you have to find that vulnerable victims was plainly wrong as to Jane Doe's 2 and 4. And that is just a home run that my friend cannot make, given the record. Of course, I know my friend is an appellate counsel and not the trial counsel below. So I want to leave those aside and turn to the pension point, the fines issue. The pension, we have three responses, Your Honor. First, if the court believes, and we put this in the footnote. I want to leave this. You may be ahead in the race, given what you heard from your friend. You can address the pension point. Go ahead. Your Honor, let me add these facts to give you comfort on the pension point. Your Honors and the law clerks can search for the FERS, the Federal Employees Retirement System. That is the program governing pension systems for a former employee, like a defendant. When the defendant had voluntarily resigned, he still had entitlement to all of the money he had already put into the system. It sort of works like Social Security, where there's a little snippet of the check when it comes out and goes straight to the pension system. And even though he did not make the mandatory retirement age, that's undisputed, the fact is that if he can get a partial amount of that reserve at age 57 or the full reserve at age 62, and given sort of the fact that I don't believe the government is going to try to get this fine while he's still in prison, there really is no worry here, Your Honors. But again, because there was a PSR fact, because the judge talked to the probation officer on the record, because both sides agreed to the PSR, and because the judge had asked if there was anything further at the end, there were plenty of opportunities for, if there were a challenge, in fact, for it to have happened below. And for all these reasons, we... I'm sorry, I just don't recall. Do we know what the amount of the pension would be? That is not in the record. And unfortunately, Your Honor, I personally couldn't figure out that number before this appeal. But it is, I did get confirmed that there is an entitlement to money, and he did, in fact, put money into the reserves. And it may not, and Your Honor, it may not be up to $20,000. And in fact, later on, if he wants to make an Eighth Amendment defense on that point, perhaps that would win. But that is not the facts that we have before, Your Honor. The judge made a below guidelines fine. It is well within the judge's discretion to do so at this point. And for all these reasons, we ask that the court affirm. I don't really think I have much to add. I don't want to beat the pension thing to death. That's pretty much been done. He's either entitled to it or he's not entitled to it. But I still think that the fine was excessive, even if he is entitled to it, because he's going to spend 25 years in prison and he's not in a position today to pay that fine. There has been a finding of indigency. I would take issue with one thing that Mr. Zapana said, and that is that he claims that if you affirm my point, rather than you reverse on my point, that the exception to 412 would swallow the rule. I don't agree with that. And I think that the exception is built in for a specific purpose, to demonstrate in situations like we have here, where there is a constitutional issue, that the defendant's constitutional right to present a defense trumps that statute. And I think that's where we are. So, unless Your Honors have any other questions, we'll await your decision. Thank you both, and we will take the matter under advisement. Thank you. That's the last argued case on the calendar, so I'll ask the clerk to adjourn the court.